Bissell, J.,
delivered the opinion of the court.
This divorce suit was begun in January, 1895, by Mrs. Whelen to obtain a legal separation from her husband William, and the payment of alimony for the support of herself and. her children. Yery little more of the case need be stated than will suffice to explain the proceedings and sustain the judgment.
The parties intermarried in 1876 in Illinois, and lived together as husband and wife until about a year before the commencement of the suit. If the allegations of the complaint were sustained by proof, Mrs. Whelen was entitled to a divorce. She charged acts and conduct which under the law and the statute would justify a judicial separation. It is wholly unnecessary to set out the nature of the charges, or the character of the case made by the complaint, because so far as the present proceeding is concerned, the plaintiff’s case was admitted. No answer was put in. A demurrer was interposed and the application for temporary alimony was based on these two pleadings. It is therefore enough to say the complaint stated a good cause of action. The only other things which need be adverted to are the allegations respecting the property of the defendant and the transfers which *197 he had made of his assets, and the affidavits which he filed in opposition to the application. The complaint was verified by the oath of the plaintiff. She filed a written motion based on it and asked alimony pendente lite for the support of herself and children, and counsel fees for the prosecution of the suit. The matter came on for a hearing on this motion and the complaint and demurrer, and the defendant’s affidavits, which tended to show that Mrs. Whelen possessed some property in Pueblo of a value which was stated. The application was not otherwise resisted. The matter was heard, and the court adjudged Mrs. Whelen entitled to alimony in the sum of $25.00 a mouth, commencing from a fixed date, and $50.00 for attorney’s fees, payable on a date named. Up to this time no objections whatever had been put in to the form of the application, or the procedure which was adopted by the plaintiff. On the announcement of the court’s conclusion, the defendant’s counsel requested leave to make specific objections, and among them stated that the complaint was not supported by affidavits.
According to the complaint, Whelen owned a verjr considerable property, real and personal, which was alleged to be of the value of $30,000. Part of it was charged to be in cash, and distributed in various banks outside of Colorado Springs, where the parties lived, and the balance in real estate in that town and shares in certain mining companies. The plaintiff alleged that Whelen had conveyed his property to one Phelan, for the purpose of concealing it from the plaintiff and to defeat the recovery of any alimony which might be awarded. We are only concerned with this matter in so far as relates to the defendant’s admissions of his wife’s charges about the property and the transfer. As has already been stated, he put in no answer, but filed an affidavit resisting the motion. It is peculiar. In fact it presents no matter which should be operative to defeat the application, or which, tends to explain or contradict or do away with any of the charges made by the complaint. Its substance is really found in the statements respecting Mrs. Whelen’s ownership *198 of a house and lot in Pueblo, its actual and its renting value. When it comes to the question of property, Whelen only says that he is out of employment, and that he is not the owner of any property, real or personal, nor was he at the time the suit was begun “on which he could realize any money whatever.” He says he has no cash in bank and had none when the suit was begun, but he believes he has good defense. He denies having any shares in mining companies. This statement makes it exceedingly plain that what the plaintiff charges respecting Whelen’s property and his financial situation must be substantially true, or that he is in no position to controvert it. He neither states that he is worth nothing, nor that he is not worth the sum the plaintiff avers, nor does he deny the transfer of his property to Phelan, for the purpose of defrauding the plaintiff out of her alimony, nor does he deny that he has money, although he alleges that he has no money in banks in Colorado Springs or elsewhere. This evasive denial is wholly consistent with the theory that he may have had a very considerable amount of money so placed as perhaps not to be available, but which was in reality a part of his estate.
There is urged on the appeal but one proposition, on which counsel apparently rely to reverse this judgment. This is substantially that the proceedings were irregular, because the plaintiff filed no petition supported by affidavits. This contention is based on a general expression found in Daniels v. Daniels, 9 Colo. 133. We concede the general practice to be according to appellant’s contention. In most cases of this description the applicant files a petition, wherein is stated the facts entitling hei to this kind of relief, the financial condition of the defendant and whatever other matters seem appropriate to the proceeding. The petition is rested on the complaint and any affidavits which may be filed, and the counter affidavits which may be put in. The matter is then heard and determined. The statement in Daniels v. Daniels simply refers to this general practice, but there is no question in that case about the regularity of the proceedings. It *199 did not turn on the failure of the plaintiff to proceed according to the general rule prevalent in courts having jurisdiction in this class of cases, but stated what the procedure had been. This we do not controvert. The only question is whether a failure to adopt this method when a judgment for temporary alimony has been entered will operate to reverse the judgment. Under circumstances like the present, we do not so conclude. A motion was prepared which may be taken as a petition, however informal and defective it may be. The complaint was verified by the oath of the plaintiff, and it, with the motion, may be taken to be the equivalent of a verified petition, coupled with an affidavit. In the present case there was no attack on the proceedings because of the irregularity of their methods. If the defendant desired to compel the plaintiff to file a petition supported by affidavits, he should have promptly and in the trial court insisted on this procedure and on his objection. The case very closely resembles a proceeding where the bill is taken pro confesso. In cases of that sort the present practice would be taken as entirely regular. How far we should go in this direction if the specific question had been raised it is unimportant to decide. Many reputable authorities hold the application can be made by motion based on a verified bill and supported by other proofs, if other proofs be necessary. Bishop on Marriage & Divorce, vol. 2, chap. 32.
We are not disposed to lay down any rule in respect to the matter, because the case does not require it. A case for alimony was regularly made out by the verified complaint, and there was nothing in the affidavits filed in opposition which should lead the court to a different conclusion, or which call on us to disturb the judgment.
It will accordingly be affirmed.

Affirmed.