Bissell, P. J.
While the merits of the controversy and the rightfulness of the judgment are questioned by both parties, by the appellee as to the sufficiency of the evidence'to support the judgment and the right of the husband to a decree of divorce, and by the appellant on the hypothesis that the wife who had been found guilty and against whom a decree had been entered is entitled to no provision out of the husband’s estate, we do not intend to determine either of those matters. The only question which we shall determine is the naked one of jurisdiction. This is the only course which we can pursue consistently with our conclusion that this court has no right to review judgments of this description. This is the first case wherein this question has been presented to the court and argued. In all the controversies between husbands and wives which have heretofore been submitted to us, neither side has questioned our right to review the judgments, nor until a recent period was the statute brought to the attention of the court. In the cases which we have heretofore decided (Hanscom v. Hanscom, 6 Colo. App. 97; Whelen v. Whelen, 8 Colo. App. 196; Dye v. Dye, 9 Colo. App. 320) it is true, except in the Whelen case, that the action was not one for divorce. Both the other cases were suits brought for separate maintenance, an action which has always been maintainable since the case of Daniels v. Daniels, 9 Colo. 133. In limine we may suggest we do not concur with counsel respecting our appellate jurisdiction in cases of that description. As we view the act creating this court wherein its jurisdiction is defined and conferred, and the passage of the statute *241 for divorce which is under consideration and found in the Session Laws of 1893, chapter 80, page 236, there can be no question respecting our right to review judgments entered in cases begun solely to procure judgment for alimony by way of separate maintenance. We have jurisdiction to review all cases and final jurisdiction to determine them within certain well defined and well understood limits. The act under consideration, the divorce act of 1893, relates solely to suits technically known as divorce suits. Actions for separate maintenance are in no sense actions for divorce. Judgments rendered thereon may be appealed to this court or brought here by writ of error and the legality and sufficiency of the judgments may be determined under the general appellate powers conferred by the act creating the court. There is no inconsistency between that position and the one which we take with reference to the construction of the divorce act of 1893. We are quite ready to admit that it might appear otherwise from the opinion in the Whelen case. This opinion recites it is an action for divorce followed by a judgment against the husband for alimony. It may be true, though this question we do not here directly decide, in a suit of that description, being one for divorce, even though the final decree may be preceded by a judgment for alimony, the matter is not reviewable by this court. Whether this be or be not true, we do not here directly determine because the question is not presented and the present case is not one of that description. Whether in a suit for divorce there could be an independent judgment for alimony which might be reviewed by appeal or writ of error prior to the final determination of the suit, if therein a severance of the bonds of matrimony be sought, and the alimony is but an incident to ■ the ultimate relief, we do not determine. It may be that this would under some circumstances be true. In any event we find nothing of this sort by an inspection of the record in the Whelen case though the matter was not called to our attention. There was no judgment of divorce when the appeal was brought here and prosecuted; it was simply a judgment for so much *242 money. On its face it was regular and the appeal was from a money judgment, and there was nothing to show that this was not the final and ultimate determination of the suit. There was no appearance by the appellee and under this record we proceeded, as manifestly we had a right, to consider the rightfulness of the judgment and affirmed it. This fully explains the situation of the Whelen case, and if we had said nothing about the fact that the prayer of the suit was for a divorce as well as for alimony, the opinion would contain nothing which could be challenged as sustaining our jurisdiction in the present suit. In any event the appeal was prosecuted by the aggrieved husband against whom the alimony was entered, and there was no appearance by the appellee and our authority to review the judgment was not doubted. If we had no right to review, the judgment of the district court which was rendered by one of competent jurisdiction would undoubtedly stand, and the parties would be bound by its decree. The question was not presented and it was left wholly unconsidered in that decision. The statute was not in our minds and not being invoked either to dismiss the appeal or affirm the judgment, it was not considered. However it may be, we must, when the question is raised or when it suggests itself to us, proceed to determine it.
The first proposition to which our attention must be directed respects the condition and character of the decree. The appellant invokes a not unfamiliar principle laid down by the text writers as well as by the adjudged cases, that wherever a judgment has been entered, the entry of a second judgment in the same suit does not operate to vacate the first one if there be nothing to show that the former was canceled or set aside. It may be a little difficult to understand that there may be two final judgments in the same suit, or that there may be one interlocutory and one final which ought of course to -embrace within its terms everything essential to a final settlement of the rights of the parties. We are not called on to speculate about the possibility of two judgments in the same suit and the entry of a second while the first *243 still stands, and whether we may then under such circumstances be compelled to resort to the one to interpret the other, or whether a right of appeal will lie from one while the first remains unchallenged. As we view the record no such case is presented. Recurring to the statement of facts, it will appear a final decree of divorce was entered in the county court. Therefrom an appeal was taken. The case then stood in the district court for trial de novo. By consent of parties that appeal was dismissed, the case sent back to the county court with an order to open up the decree and hear the parties on the matter of alimony which had been left undetermined by the original decree. The terms of the stipulation are broad and comprehensive, and must conclude the parties and therefrom and therefrom only must be determined the form, character and terms of the decree ultimately entered in the county court thereunder. According to the stipulation the cause was to be remanded to the county court and redocketed, the decree was to be opened up and the county court permitted to make the proper order with reference to the payment of costs, counsel fees and alimony, and if necessary enter its decree nunc pro tunc, reserving to the respective parties the right of appeal. Thereunder the case went back to the county court, was opened up a'hd the parties proceeded to a hearing on the single question of alimony. On the evidence presented the court adjudged alimony to Mrs. Mercer. Our judgment of this proceeding is that the decree now stands as it would have stood had this hearing with reference to alimony been had ’ prior to its entry and prior to an appeal to the district court. In other words, that part of the decree severing the bonds of matrimony, and that part adjudging alimony to Mrs. Mercer formed part of and is practically one decree which, as an entirety under the evidence produced upon both branches of the case and on the verdict of the jury, settled and determined the rights of the parties. We do not believe there are two decrees, but one and one only. Whether under circumstances like these the party who has a decree of divorce, but against whom there is a judg *244 ment for alimony, has an appeal we do not determine. Counsel of course remember the well settled principle of the appellate courts that the successful party can never appeal, but must seek a review by writ of error. The principle may not be applicable to cases where a party wins in part and loses in part, but the right of review by appeal may still exist. It is unimportant to consider it.
Having determined this question of the unity and entirety of the decree, we now come to the main question respecting our power to review. Under the act creating this court, found in the Session Laws of 1891, page 118, we may review any judgment entered either in the county or district court, and our determination will be final save in the excepted cases. Tins doctrine has been announced by this court and it has been approved by the supreme court whose province it is to determine the extent of our jurisdiction. Under that act there is no doubt of our jurisdiction to review this judgment. This jurisdictional authority is varied if at all by the divorce act of 1893 heretofore referred to.
The right of appeal is neither a constitutional nor a vested one unless there be some provision in the organic law conferring the right of review as is the case with writs of error from county courts. Otherwise the law always is that the right of appeal is a matter of statute and the courts must look alone to the statutes giving it to determine whether the right inures to the parties or the courts have jurisdiction. Bailey v. Kincaid, 64 N. Y. Supreme Ct. Rep. 516; Kundinger v. City of Saginaw, 59 Mich. 555; In the matter of Storey, 120 Ill. 244.
With this premise we proceed to determine the proper construction of the statute. One of the recognized and cardinal principles of statutory construction, at least in this country, is that the title of the act, as well as its general purpose and scope, may be looked at, in order to arrive at its proper construction. Holy Trinity Church v. U. S., 143 U. S. 462. In this case, speaking by Mr. Justice Brewer, the law with reference to the title of an act for the purposes of con *245 struction is very aptly expressed by tbe following quotation: “Among other things which may be considered in determining the intent of the legislature is the title of the act. We do not mean that it may be used to add to or take from the body of the statute (Hadden v. The Collector, 5 Wall. 107), but it may help to interpret its meaning. In the case of United States v. Fisher, 2 Cranch, 358, 386, Chief Justice Marshall said: ‘ On the influence which the title ought to have in construing the enacting clauses much has been said; and yet it is not easy to discern the point of difference between the opposing counsel in this respect. Neither party contends that the title of an act can control plain words in the body of the statute; and neither denies that, taken with other parts, it may assist in removing ambiguities. Where the intent is plain, nothing is left to construction. Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived; and in such case the title claims a degree of notice, and will have its due share of consideration.’ ” The same rule has been expressed in other cases : Oregon & C. R. Co. v. U. S., 67 Fed. Rep. 460; Proprietors of Mills v. Randolph, 157 Mass. 345.
This has become an established doctrine in this country. Acting under it we will note the title of the act of 1893, which is : “ An act to provide for a system of practice and procedure in relation to divorce and alimony, and to repeal certain acts in conflict therewith.” According to that title the purpose of the legislature was to provide a system of practice and procedure with reference to divorce and alimony. Prior to that time there had been no practice or system established by statute. The grounds on which a divorce might be had were matters of legislative enactment. Suits were begun and followed under the rules and practice prevailing in equity save as modified by code provisions. There was, however, in no general or specific sense a statutory system of procedure in divorce cases. The practice had become somewhat loose and it was evidently the legislative purpose to provide a definite procedure for this class of cases. There *246 is a wide variance between tbe practice established by this act with reference to the commencement, continuance, trial and judgment in divorce suits and that which prevails in ordinary civil actions begun and ended under the code. These differences are noted simply to emphasize the fact that it was the legislative intent to provide a definite procedure by which the cases must be governed and the practice which parties to those suits must follow to obtain valid decrees. We now come to a consideration of that part of the act controlling the right of review. These provisions are found in sections 10 and 11 of the act. The trial court had the power, if there was no review or writ of error sued out, to open up the decree within a year. Failing to appeal or sue out a writ or move to open up the case the decree was conclusive for all time and could never be reopéned. In this respect there is a difference between decrees for divorce and decrees hi ordinary equitable suits. According to the provisions of section 11 an appeal would lie from this decree to the supreme court. The act also provided that a writ of error might be sued out to the supreme court to review the judgment, but there is a proviso that this writ of error must be sued out within six months from the date of the decree and not after.
This is a most significant limitation on the rights of the parties and a conclusive reason to sustain the theory of the legislative intent to provide a complete system of practice. Under the ordinary statute appeals lie either to the supreme court or to this. Writs of error may also be sued out either from the supreme court or from this to review final judgments or decrees. These writs may be sued out at any time within three years from the entry of the decree or judgment. These things conclusively demonstrate a well defined legislative purpose to provide a system of procedure. We believe therefore under the general rules of construction which always prevail in such cases that wherever a legislature attempts to enact a statute covering a subject-matter which has theretofore been an object of legislation and provide a complete system for it, we have a right to conclude that it was the leg *247 islative purpose to repeal all acts inconsistent with it. We are familiar with the rule that repeals by implication are not favored. But wherever a new rule is provided and a complete system adopted, it will under all the authorities be taken as a repeal by implication if there are-no direct words of repeal in the enactment. Endlich on Interpretation of Statutes, p. 268, § 200; p. 270, §§ 201, 202, 204; Sutherland on Statutory Construction, § 137; The State v. Conkling, 19 Cal. 501; Ill. & Michigan Canal Co. v. City of Chicago, 14 Ill. 344; Mears v. Stewart, 31 Ark. 17; Dowell v. Tucker, 46 Ark. 438; State v. Campbell, 44 Wis. 529.
Many other cases will be found in the text books .to which we have inferred bearing on this general question. While there are adjudications laying down the broad general doctrine that repeals by implication are not favored and that even affirmative words will not be taken as a repeal of the former statutes in the absence of absolute repugnancy or a repealing clause, the general proposition is approved by all text writers and by all courts that a repeal by implication may be inferred where there are affirmative provisions or where there is any repugnancy between the two statutes or wherever there is exhibited an evident purpose to provide a complete scheme or system of procedure governing and covering a particular class of cases which is inconsistent with the antecedent enactments. Crisp v. Bunbury et al., 8 Bing. 394; 21 English Com. Law, 592.
We are not compelled, however, to resort only to these general principles. There is an express provision in the act of 1893 that appeals or writs of error shall lie from decrees in divorce suits to the supreme court within the limited time of six months. We have also an express repeal of all acts in conflict with the statute. This repealing clause is broad and sweeping, repeals all other acts on the subject of divorce and alimony, destroys the right to sue out a writ of error within three years and by necessary intendment deprives this court of jurisdiction to review decrees in divorce suits. We have reached this conclusion after much argument and very great *248 and grave consideration. The attention which we have given to this discussion does not proceed from the desire which it has often been said formerly controlled chancellors, to wit, an ambition to reach out and extend jurisdiction to all cases which can by construction be brought within our power because the condition of the appellee’s litigation is such as to incline us, wherever it is consistent with the rights of the parties and where we conceive it to be our duty, to refuse jurisdiction unless we conclude it is clearly within the scope and purview of our powers. We have less hesitation in reaching and expressing this conclusion because this is an appeal from a judgment of the county court. The cause was submitted before the passage of the late act, and under an adjudication of the supreme court the aggrieved party may take this case by writ of error or apjieal to that tribunal which can then upon reargument and careful consideration examine the question with their great learning and ability, and determine whether we have erred in our conclusions, and if we have, insure to the parties the protection of their rights.
For the reasons herein expressed, this appeal must be dismissed.

Dismissed.